UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., on Behalf of Itself and Each of Its Related Companies that Provided Insurance Coverage to Respondents/Defendants,<br><br>Petitioner/Plaintiff,<br><br>- against -<br><br>WYNN LAS VEGAS, LLC and TUTOR-SALIBA CORPORATION,<br><br>Respondents/Defendants. | Civ. No.:<br><br>**PETITION TO COMPEL ARBITRATION AND, IN THE ALTERNATIVE, COMPLAINT FOR BREACH OF CONTRACT, UNJUST ENRICHMENT, QUANTUM MERUIT AND <u>DECLARATORY JUDGMENT</u>** |

Plaintiff, National Union Fire Insurance Company of Pittsburgh, Pa., on behalf of itself and each of its related companies that provided insurance coverage to Respondents/Defendants ("National Union") respectfully petitions the Court for an Order pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, and the terms of the Parties' arbitration agreement, (i) compelling Wynn Las Vegas, L.L.C. ("Wynn") and Tutor-Saliba Corporation ("Tutor-Saliba") (jointly "Respondents") to submit to binding arbitration. If the instant Petition to Compel Arbitration ("Petition") is denied as to either Respondent, then National Union asserts claims before this Court seeking money damages from such Respondent(s) for breach of contract, unjust enrichment, quantum meruit and Declaratory Judgment.

### <u>NATURE OF THE CASE</u>

1. Beginning on or about May 15, 2006, National Union provided an insurance program (the "Insurance Program") including general liability insurance coverage to Respondents pursuant to certain policies of insurance and endorsements thereto (the "Policies"), including a certain Large Risk Rating Plan ("LRRP") endorsement. In connection with the

Policies, the Parties entered into certain written agreements governing the Insurance Program, including a Payment Agreement effective May 15, 2006 (the "Payment Agreement") and certain Addenda and Schedules (the Payment Agreement, the Addenda, Schedules and Policies collectively referred to as the "Program Agreements").

2. The LRRP endorsement sets out Respondents' obligations to pay premium and to reimburse National Union for retained losses. The LRRP specifies the "retention" amounts of $500,000 for reimbursable deductible losses for each policy year and further provides that "*Final Premium,* will be payable in its entirety promptly unless otherwise specified in a premium finance agreement between you and us." The Payment Agreement, which constitutes the premium finance agreement between Respondents and National Union, defines Respondents' "Payment Obligation," and also includes broad and binding arbitration provisions.

3. Respondents are currently in default of their Payment Obligation to National Union in an amount up to $500,000, which amount may be subject to adjustment, and other further and additional amounts due under the Payment Agreement (or that may become due during the course of this proceeding). Respondent Wynn further contends that $481,958.68 paid by it on account of an insured claim asserted by Continental Fire Sprinkler (the "Continental Claim") was paid under protest and is subject to being returned to Wynn.

## THE PARTIES

4. Petitioner/Plaintiff National Union is a Pennsylvania corporation, with a principal place of business in New York, New York.

5. Upon information and belief, respondent/defendant Wynn is a Nevada

2

limited liability company with a principal place of business in Las Vegas, Nevada.

6. Upon information and belief, respondent/defendant Tutor-Saliba is a California corporation with a principal place of business in Sylmar, California. Upon information and belief, Tutor-Saliba is a wholly-owned subsidiary of Tutor-Perini Corporation.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). The amount in controversy, exclusive of interest and costs, exceeds $75,000 and National Union and Respondents are citizens of different States.

8. Venue is proper within this district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the within action occurred in this district and because Respondents are subject to personal jurisdiction in this district.

9. Jurisdiction and venue also are proper within this district because, as part of the Parties' agreements to arbitrate (discussed below), the Parties agreed to submit any motion to compel arbitration to "a court of competent jurisdiction in the City, County, and State of New York."

## FACTS COMMON TO ALL COUNTS

**The Insurance Program Between The Parties**

10. Beginning on or about May 15, 2006, National Union provided the Insurance Program, pursuant to certain Program Agreements. The Program Agreements include Policies, Addenda and Schedules, and a Payment Agreement.

11. The Policies include a LRRP endorsement which sets out Respondents'

obligations to pay premium and to reimburse National Union for retained losses. The LRRP specifies the "retention" amounts of $500,000 for reimbursable deductible losses for each policy year and further provides that "*Final Premium,* will be payable in its entirety promptly unless otherwise specified in a premium finance agreement between you and us."

**The Payment Agreement Between The
<u>Parties And Respondents' Breach of Same</u>**

12. The Payment Agreement constitutes the premium finance agreement between Respondents and National Union. It defines Respondents' "Payment Obligation," and it also includes broad and binding arbitration provisions. The Payment Agreement is annexed hereto as **Exhibit A**.

13. The Payment Agreement became effective on or about May 15, 2006 and ends "only after You [Respondents] and we [National Union] have settled and paid all obligations between You and us relating to this Agreement." Ex. A. Accordingly, the Payment Agreement remains in full force and effect.

14. As the governing premium finance agreement, the Payment Agreement provides:

> **WHAT HAVE *YOU* AND WE AGREED TO?**
> *We* **have agreed** to the following:
>
> - to provide *You* insurance and services according to the *Policies* and other agreements*;* and
> - to extend credit to *You* by deferring our demand for full payment of the entire amount of *Your Payment Obligation* if *You* make partial payments according to this Agreement.
>
> To induce us to agree as above,
> *You* **have agreed** to the following:
>
> - to pay us all *Your Payment Obligation* and to perform all *Your* other obligations according to this Agreement and

4

>    *Schedule* for all entities covered by the *Policies*;
> - To provide us with collateral according to this Agreement and *Schedule*.

Ex. A (bold and italics in original).

15. In turn, "Your Payment Obligation" is defined as follows:

> "**Your Payment Obligation**" means the amounts that *You* must pay us for the insurance and services in accordance with the terms of the Policies, this Agreement, and any similar primary casualty insurance policies and agreements with us incurred before the inception date hereof. Such amounts shall include, but are not limited to, any of the following, including any portions thereof not yet due and payable:
>
> - the premiums and premium surcharges, taxes and assessments,
> - *Deductible Loss Reimbursements*
> - any amount that we may have paid on *Your* behalf because of any occurrence, accident offense, claim or suit with respect to which *You* are a self-insurer,
> - any other fees, charges, or obligations as shown in the *Schedule* or as may arise as *You* and we may agree from time to time,
> - costs and expenses incurred by any third party administrator,
>
> **Loss Reserves**: *Your Payment Obligation* includes any portion of the premiums, premium surcharges, *Deductible Loss Reimbursements* or other obligations that we shall have calculated on the basis of our reserves for *Loss and ALAE*. Those reserves shall include specific reserves on known *Losses and ALAE*, reserves for incurred but not reported *Losses and ALAE*, and reserves for statistically expected development on *Losses and ALAE* that have been reported to us. Any *Loss* development factors we apply in determining the such reserves will be based on our actuarial evaluation of relevant statistical data including, to the extent available and credible, statistical data based upon *Your* cumulative Loss and *ALAE* history.

Ex. A (2006 Addendum).

16. In breach of the Payment Agreement, Respondents are currently in default of their Payment Obligation to National Union in an amount up to $500,000, which amount may

5

be subject to adjustment, and other further and additional amounts due under the Payment Agreement (or that may become due during the course of this proceeding).

**The Broad Arbitration Agreement Between the Parties**

17. The Payment Agreement broadly requires that all disputes about "*Your Payment Obligation*" be submitted to arbitration before a Panel of three industry qualified arbitrators. *See* Ex. A ("HOW WILL DISAGREEMENTS BE RESOLVED"). In addition, "[a]ny other unresolved dispute arising out of this Agreement must be submitted to arbitration." *Id.*

18. The Payment Agreement further provides that the Arbitration Panel "will have exclusive jurisdiction over the entire matter in dispute, including any question as to its arbitrability":

> The arbitrators may award compensatory money damages and interest thereon. They may order You to provide collateral to the extent required by this Agreement. They will have exclusive jurisdiction over the entire matter in dispute, including any question as to its arbitrability.

Ex. A.

19. The Payment Agreement vests jurisdiction in this Court to decide this Amended Petition to Compel Arbitration, specifically providing that any motion to compel arbitration, or to have an arbitrator appointed by the Court, must be brought "in a court of competent jurisdiction in the City, County, and State of New York":

> **How arbitrators must be chosen**: You must choose one arbitrator and we must choose another. They will choose the third. If you or we refuse or neglect to appoint an arbitrator within 30 days after written notice from the other party requesting it to do so, or if the two arbitrators fail to agree on a third arbitrator within 30 days of their appointment, either party may make application only to a court of

> competent jurisdiction in the City, County, and State of New York. Similarly, any action or proceeding concerning arbitrability, including motions to compel or stay arbitration, may be brought only in a court of competent jurisdiction in the City, County, and State of New York.

Ex. A (2006 Addendum).

20. The Payment Agreement further provides that the arbitrators must have certain qualifications:

> **Qualifications of arbitrators:** Unless *You* and we agree otherwise, all arbitrators must be executive officers or former executive officers of property of casualty insurance or reinsurance companies or insurance brokerage companies, or risk management officials in an industry similar to *Yours*, domiciled in the United States of America not under the control of either party to this Agreement.

Ex. A.

21. Finally, the Payment Agreement provides that "[t]he arbitration must be governed by the United States Arbitration Act, Title 9 U.S.C. Section 1, et seq. ["FAA"]." Ex. A. However, even in the absence of this express provision, the FAA would apply because the instant dispute involves interstate commerce.

**The Agreement to Pay the Costs of Enforcement**

22. The Payment Agreement provides:

> **WHO MUST PAY TO ENFORCE THIS AGREEMENT?** If You or we fail to perform or observe any provision under this Agreement, the other may incur reasonable additional expenses to enforce or exercise its remedies. Either You or we must reimburse the other upon demand and presentation of clear and convincing supporting evidence for any and all such additional expenses.

Ex. A. National Union seeks an award of its "reasonable additional expenses to enforce or exercise its remedies" under the Payment Agreement, including but not limited to its reasonable attorneys'

fees and costs in connection with this Petition and in the Arbitration.

**The Arbitration Demand**

23. Efforts to resolve this foregoing dispute having failed, National Union served Respondents with an Arbitration Demand on or about April 1, 2020, seeking an arbitral award of the monies owed (the "Arbitration").

24. In the Arbitration Demand, National Union seeks an award pursuant to the Program Agreements determining all amounts due to it and an award against each Respondent, jointly and severally, providing for payment of all such amounts, plus interest and the Cost of Enforcement. Additionally, National Union seeks an award that all amounts billed by National Union to Respondents falls within the "must abide" clause of the governing Payment Agreement, stating that "You [Respondents] must abide by the results under this Agreement of any payment of Loss or ALAE that the claims service provider or we shall have made in the absence of negligence and in good faith under any of the Policies" (Ex. A), and that, accordingly, all amounts billed by National Union, and all amounts previously paid to National Union on account of the Insurance Program, including the Continental Claim, were valid, due and owing.

25. Notwithstanding the foregoing provisions that require arbitration, in a telephone conversation on April 17, 2020, counsel for Wynn advised that Wynn may contend that the arbitration provision may not be enforceable and that it reserved the right to commence a proceeding to stay or otherwise oppose arbitration.

26. This Petition follows.

## COUNT ONE
### (PETITION TO COMPEL ARBITRATION)

27. National Union incorporates by reference its allegations in paragraphs 1 through 26 as if fully set forth herein.

28. National Union and Respondents entered into valid and binding broad agreements to arbitrate.

29. The Parties currently dispute Respondents' Payment Obligation to National Union.

30. The dispute falls within the scope of the Parties' broad agreement to arbitrate as set forth in the governing Payment Agreement. Moreover, under the Payment Agreements, any issues as to arbitrability are solely for the arbitrators to resolve.

31. National Union has served an Arbitration Demand upon Respondents, demanding that they arbitrate the Parties' dispute. Respondent Wynn has asserted it may not be obligated to arbitrate.

32. This matter is governed by the FAA because (i) it involves interstate commerce, and (ii) the Payment Agreement expressly incorporates the FAA. Section 4 of the FAA (9 U.S.C. § 4), provides:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement ... The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

33. Because the Parties have undeniably entered into a broad arbitration agreement, and the Parties' disputes relate to those agreements and indeed are governed by them, National Union is entitled to an order pursuant to Section 4 of the FAA, and the terms of the relevant agreements, compelling Respondents to arbitrate all disputes set forth in the Arbitration Demand.

### COUNT TWO
### (FOR BREACH OF CONTRACT)

34. National Union incorporates by reference its allegations in paragraphs 1 through 33 as if fully set forth herein.

35. As set forth above, National Union is entitled to entry of an Order requiring Respondents to arbitrate all disputes between them set forth in the Arbitration Demand.

36. Should the Court deny or dismiss National Union's Petition to Compel Arbitration as set forth in Count One herein, National Union seeks judgment against Respondents awarding National Union money damages in an amount to be proven at trial but up to $500,000 for Respondents' breaches of contract.

37. The Program Agreements, including but not limited to the LRRP and the Payment Agreement, are valid and enforceable contracts.

38. To date, National Union has performed all of its obligations to Respondents under the Program Agreements.

39. Respondents breached their obligations under the Insurance Program by failing to pay certain amounts owed as part of their Payment Obligation.

40. To date, Respondents have made no attempt to cure or mitigate this breach by tendering to National Union, at any time up to and including the date of this Petition/Complaint, the full amount owed to National Union.

41. As a direct and proximate result of Respondents' breaches of contract, to date, National Union has suffered damages in an amount of up to $500,000, plus interest and costs of enforcement.

## COUNT THREE
### (FOR UNJUST ENRICHMENT AND QUANTUM MERUIT)

42. National Union incorporates by reference its allegations in paragraphs 1 through 41 as if fully set forth herein.

43. As set forth above, National Union is entitled to entry of an Order requiring Respondents to arbitrate all disputes between them set forth in the Arbitration Demand.

44. In the event the Court denies or dismisses National Union's Petition to compel arbitration as set forth in Count One herein, National Union seeks judgment awarding it damages in an amount to be proven at trial but not less than $500,000, plus interest and costs of enforcement, for Respondents' unjust enrichment and for the benefits of the insurance coverage received which Respondents must pay for the value received.

## COUNT FOUR
### (FOR DECLARATORY JUDGMENT)

45. National Union incorporates by reference its allegations in paragraphs 1 through 44 as if fully set forth herein.

46. Respondent Wynn has asserted that $481,958.68 paid by it on account of the Continental Claim was paid under protest and is subject to being returned by National Union.

This is an actual controversy and a properly constituted arbitration panel should determine that this payment was due and owing and is not subject to reimbursement by National Union to Wynn.

47. In the event the Continental Claim issue is not held to be within the jurisdiction of an arbitration panel, this Court should issue a declaratory judgment that this payment was due and owing and is not subject to reimbursement by National Union to Wynn.

## PRAYER FOR RELIEF

WHEREFORE, National Union demands the following relief:

(a) An order compelling Respondents to arbitrate the dispute set forth in the Arbitration Demand;

(b) In the alternative, a judgment against Respondents for money damages, in an amount to be proven at trial, plus interest thereon;

(c) In the alternative, should the Continental Claim reimbursement issue be held non-arbitrable, a declaratory judgment in National Union's favor that this payment was due and owing and is not subject to reimbursement by National Union to Wynn;

(d) The costs and disbursements of this action, including an award of reasonable attorneys' fees as one of the Costs of Enforcement under the Payment Agreement to the extent applicable; and

(e) Such other and further relief as the Court deems just and proper.

Dated: New York, New York
April 20, 2020        ZEICHNER ELLMAN & KRAUSE LLP

By: /s/ Michael S. Davis
Michael S. Davis
Yoav M. Griver
*Attorneys for petitioner/plaintiff National Union Fire Insurance Company of Pittsburgh, Pa.*
1211 Avenue of the Americas, 40th Floor
New York, New York 10036
(212) 223-0400