UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., *on behalf of itself and each of its related companies that provided insurance coverage to Respondents/Defendants*,<br><br>                    Petitioner,<br><br>– *against* –<br><br>WYNN LAS VEGAS, LLC and TUTOR-SALIBA CORPORATION,<br><br>                    Respondents. | <u>OPINION AND ORDER</u><br>20 Civ. 3139 (ER) |

RAMOS, D.J.:

      Petitioner National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") seeks to compel arbitration to determine whether it was entitled to a reimbursement Respondent Wynn Las Vegas, LLC ("Wynn") made to it, in connection with a separate lawsuit involving Respondent Tutor-Saliba Corporation ("Tutor-Saliba"). Pending before the Court is National Union's motion to compel arbitration and Wynn's countermotion to dismiss for lack of personal jurisdiction, improper venue, and *forum non conveniens*. Docs. 28 and 32.

      For the reasons set forth below, National Union's motion to compel arbitration is GRANTED, and Wynn's countermotion to dismiss is DENIED.

I.    BACKGROUND

    **A. Factual Background**

    *1. Agreements Between the Parties*

      Wynn is a company that operates a resort-casino in Nevada. It underwent a construction project, hiring Tutor-Saliba as a general contractor for the project. In connection with that project, National Union issued a policy of general liability insurance

to Tutor-Saliba (the "Policy"). Tutor-Saliba was the named insured under the Policy, and Wynn was named as an additional insured. The Policy obligated Respondents to reimburse National Union for certain losses and expenses that accrued while they were covered.

On May 15, 2006, National Union and Respondents entered into an agreement governing the Respondents' payment obligations under the Policy (the "Payment Agreement"). Doc. 29-2 at 2. Under the Payment Agreement, Respondents agreed to be jointly and severally liable for any amounts due under the terms of the Policy. The Payment Agreement states that Respondents agreed "to pay [National Union] all [of their] *Payment Obligation* and to perform all [their] other obligations according to [the Payment Agreement] and *Schedule* for all entities covered by the *Policies*," which includes the Policy. *Id.* at 4. Under the Payment Agreement, "Payment Obligation" means "the amounts that [Respondents] must pay [National Union] for the insurance and services in accordance with the terms of the *Policies*, [the Payment Agreement], and any similar primary casualty insurance policies and agreements with [National Union] incurred before the inception date" of the Payment Agreement. *Id.* at 12–13. The Payment Agreement also contains an arbitration provision and a forum selection clause. *Id.* at 9–10, 14.

2. *The Continental Litigation*

On April 18, 2013, Tutor-Saliba filed suit in Nevada state court against Continental Fire Sprinkler Company ("Continental") and another company not party to the instant suit, for claims arising out of Continental's work on the construction project (the "Continental Litigation").[1] Doc. 33-2 at 2. Continental had entered into a subcontract agreement with Tutor-Saliba, whereby Continental agreed to provide work,

---

[1] Wynn is not party to the Continental Litigation. *See* Doc. 33-2 at 2.

2

materials, and equipment for the purposes of installing and furnishing the fire sprinkler system for the project. *Id.* at 13.  In its complaint, Tutor-Saliba alleged that Continental's improper installation caused leakage in the project's fire sprinkler system, causing damage. *Id.* at 4.

The subcontract agreement between Tutor-Saliba and Continental incorporated the Policy, and Continental was named an additional insured.  On April 17, 2013, Continental filed a claim with National Union as an insured under the Policy for defense and indemnity in the Continental Litigation.  Doc. 33-3 at 4–7.  National Union eventually agreed to pay the fees and costs for Continental's defense in that suit.

In 2019, National Union demanded $481,958.68 from Wynn as a reimbursement obligation in connection with the defense of Continental in the Continental Litigation.  On January 2, 2020, Wynn paid the reimbursement amount under protest.  Doc. 50-5 at 2.  Wynn soon after sought return of that payment, threatening to bring suit in Nevada if it was not repaid.  Doc. 50 ¶¶ 15–16.  On April 1, 2020, National Union served Respondents with an arbitration demand, seeking a determination that all amounts billed by and paid to National Union were valid, including the defense costs reimbursed by Wynn as part of the Continental Litigation.  *Id.* ¶ 17; Doc. 1 ¶¶ 23–24.

**B. Procedural History**

National Union filed the instant petition on April 20, 2020.  Doc. 1.  In its petition, National Union requests that the Court compel the parties to arbitrate their dispute regarding what amounts were due as a result of the Continental Litigation.  *Id.*  National Union also asserts three claims in the event that the Court denies its request to arbitrate: (1) breach of contract, (2) unjust enrichment, and (3) declaratory judgment.  *Id.*

Meanwhile, on May 8, 2020, Wynn filed suit against National Union and Tutor-Saliba in a federal court in the district of Nevada.  Doc. 29-3 at 2.  That suit also concerns

3

the parties' obligations in connection with the Continental Ligation. In that suit, Wynn asserted three claims against National Union: (1) breach of the implied covenant of good faith and fair dealing, (2) conversion, and (3) violation of the Nevada Unfair Claims Settlement Practices Act. *Id.* That case remains pending before the Nevada court.[2]

Following a pre-motion conference, National Union filed the instant motion to compel arbitration on September 1, 2020. Doc. 28. On September 22, 2020, Wynn filed its response, also including a request that the Court dismiss the petition for lack of personal jurisdiction, improper venue, and *forum non conveniens*.[3] Doc. 32.

## II. DISCUSSION

### A. Motion to Compel Arbitration[4]

*1. Legal Standard*

Section 4 of the Federal Arbitration Act requires courts to compel arbitration in accordance with the terms of the arbitration agreement upon the motion of either party to the agreement, provided that there is no issue regarding its creation. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (citing 9 U.S.C. § 4). Whether the parties agreed to arbitrate is generally a question decided by the court unless the parties "clearly and unmistakably provide otherwise." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). Determinations of arbitrability may be delegated to an

---

[2] On November 23, 2020, National Union moved the Court to enjoin Wynn from continuing to prosecute the case before the Nevada court. Doc. 41. The Court denied that motion on December 4, 2020. Doc. 53.

[3] Tutor-Saliba also filed a limited non-opposition in response to National Union's motion to compel arbitration, requesting that the Court transfer the action to Nevada or order that arbitration take place in Nevada. Doc. 31. The Court denies both requests based on the same reasons it denies Wynn's requests to dismiss for improper venue and *forum non conveniens* below.

[4] Because the Court concludes below that it has personal jurisdiction over the case, it addresses the parties' motions in chronological order. *See Berkley Assurance Co. v. MacDonald-Miller Facility Sols, Inc.*, No. 19 Civ. 7627 (JPO), 2019 WL 6841419 (S.D.N.Y. Dec. 16, 2019) (analyzing applicability of forum selection clause to plaintiff's motion for preliminary injunction before resolving defendant's motion to dismiss for lack of personal jurisdiction based on that same clause).

arbitrator "if there is clear and unmistakable evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator." *Shaw Grp. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121 (2d Cir. 2003) (quoting *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002) (internal quotation marks and emphasis omitted)).  In the absence of clear and unmistakable evidence that the parties intended to submit the question of arbitrability to the arbitrator, courts assume they, not arbitrators, were intended to decide "certain gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy." *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003).

To determine whether to compel arbitration, the Court must weigh four primary considerations:  "(1) whether the parties in fact agreed to arbitrate; (2) the scope of the arbitration agreement; (3) if the parties assert federal statutory claims, whether Congress intended those claims to be nonarbitrable; and (4) if the court concludes that some, but not all, of the claims in the case are arbitrable, whether to stay the balance of the proceedings pending arbitration." *Application of Whitehaven S.F., LLC v. Spangler*, 45 F. Supp. 3d 333, 342 (S.D.N.Y. 2014) (citing *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004)), *aff'd*, 633 Fed. Appx. 544 (2d Cir. 2015).  "A party resisting arbitration on the grounds that the arbitration agreement . . . does not encompass the claims at issue[] bears the burden of proving such a defense." *Kulig v. Midland Funding, LLC*, 13 Civ. 4715 (PKC), 2013 WL 6017444, at *2 (S.D.N.Y. Nov. 13, 2013) (citing *Green Tree Fin Corp. v. Randolph*, 531 U.S. 79, 92 (2000)).

Moreover, "[f]ederal policy strongly favors arbitration as an alternative dispute resolution process," so "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," and "[f]ederal policy requires [courts] to construe arbitration clauses as broadly as possible." *Collins & Aikman Prods Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995) (quotations omitted).  "[U]nless it may be said with

positive assurance that the arbitration clause" does not cover the disputed issue, the court must compel arbitration. *Id.* (quoting *David L. Threlkeld & Co., Inc. v. Metallgesellschaft Ltd. (London)*, 932 F.2d 245, 250 (2d Cir. 1991)).

    *2. Analysis*

As an initial matter, it is undisputed that National Union and Wynn entered into the Payment Agreement. It is also disputed that the Payment Agreement contains "a valid agreement to arbitrate" certain disputes between the parties. *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001) (quotation omitted). Further, Wynn never argues that the Payment Agreement's arbitration provision is invalid for any reason regarding the agreement's formation. Instead, Wynn simply contends that the arbitration provision of the Payment Agreement is inapplicable to National Union's claims here. Thus, the sole issue before the Court is whether resolution of National Union's demands falls within the scope of the arbitration provision of the Payment Agreement.

The Payment Agreement's arbitration provision states that, "[i]f [Respondents] disagree with [National Union] about any amount of [their] *Payment Obligation* that" National Union has asked to pay, those disagreements—if not resolved following an exchange of correspondences—"must immediately be submitted to arbitration." Doc. 29-2 at 9. As for "disputes other than disputes about payment due," the Payment Agreement states that "[a]ny other unresolved dispute arising out of this Agreement must be submitted to arbitration." *Id.*

Wynn argues that National Union's demands do not fall within the scope of the Payment Agreement's arbitration provision, as those demands do not arise out of the Payment Agreement or the calculation of any payment obligation within that agreement. Rather, Wynn contends, National Union's claims are coverage disputes that arise out of the Policy itself—matters outside of the purview of the Payment Agreement's arbitration

6

provision. Because the Policy does not itself contain an arbitration provision, Wynn argues that it should not be compelled to arbitrate this dispute.

The Second Circuit recently analyzed an identical arbitration provision in *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. BMC Stock Holdings, Inc.*, 796 F. App'x 45 (2d Cir. 2019) (summary order), a fact that Wynn conceded at the pre-motion conference on this matter, Doc. 26 at 10:15–18. In that case, the insurer (National Union) sought reimbursement from an insured party for litigation defense costs that the latter declined to pay. *BMC Stock Holdings*, 796 F. App'x at 46–47. The insured party sued in California, and the insurer in turn filed a petition to compel arbitration in New York, asserting that the dispute fell within the scope of the arbitration provision. *Id.* at 47.

The district court granted the petition to compel arbitration, and the Second Circuit affirmed. *Id.* at 47, 49. As here, the insured party argued that the Payment Agreement was inapplicable because, at bottom, the suit was a coverage dispute regarding whether the claims at issue were covered by the insurance policies between the parties. *Id.* at 47. The Second Circuit rejected that argument. *Id.* at 47–48. The court emphasized that such an argument "ignores the Payment Agreement's language, which clearly incorporates the terms of the Policies by reference," noting that the term "'Payment Obligation[]' . . . is defined as . . . 'the amounts that [the insured party] must pay [the insurer]' for insurance coverage and services 'in accordance with the terms of the *Policies*.'" *Id.* And like the Payment Agreement here, the agreement "require[d] disputes about [the insured party's] 'Payment Obligation' to be submitted to an arbitrator." *Id.* at 47. Thus, "[b]y referencing the Policies in its terms, the Payment Agreement provides that even payment disputes premised on an underlying coverage dispute fall within the arbitration provision's reach." *Id.* at 48.

The Court is persuaded by the reasoning in *BMC Stock Holdings* and, given the similarities with that case, concludes that the dispute here falls within the scope of the Payment Agreement's arbitration provision.[5] Critically, that interpretation is consistent with the plain language of the provision here. Respondents' "Payment Obligation" includes "the amounts that [they] must pay [National Union] for the insurance and services in accordance with the terms of," among other things, the Policy. *See* Doc. 29-2 at 12. Thus, because this dispute concerns whether the costs at issue were covered under the terms of the Policy, it is a disagreement "about [an] amount of [Respondents'] Payment Obligation"—and is subject to arbitration. *See id.* at 9, 12–13.

Wynn argues that the Second Circuit's analysis in *BMC Stock Holdings* is inapplicable. First, Wynn points to courts in other circuits for the premise that this case is governed solely by the terms of the Policy—not the Payment Agreement. *See, e.g.*, *Alticor, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 411 F.3d 669 (6th Cir. 2005); *Aloha Petroleum, Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 25 F. Supp. 3d 1305 (D. Haw. 2014). Second, Wynn attempts to distinguish the instant case from *BMC Stock Holdings*. Wynn notes that the insured party in *BMC Stock Holdings* withheld payment, and by withholding payment it violated the terms of the parties' payment agreement. Wynn asserts that here, by contrast, it did not dispute its obligation to pay under the Payment Agreement and has already remitted payment in accordance with that agreement. Thus, Wynn argues, there is no issue regarding whether Wynn complied with the terms of the Payment Agreement; instead, according to Wynn, the issue is whether it owed that money under the terms of the Policy.

---

[5] In its briefing, National Union repeatedly emphasizes that the Second Circuit's decision in *BMC Stock Holdings* is binding. However, as a summary order, *BMC Stock Holdings* does not have precedential effect. 2d Cir. R. 32.1.1(a). Still, as noted, the Court concludes that its reasoning is persuasive and applicable here.

The Court is unconvinced by Wynn's arguments. As an initial matter, the Court notes that the plain language of the arbitration provision compels the Court's conclusion independent of whether *BMC Stock Holdings*'s reasoning is applicable. Further, Wynn's arguments fail to convince the Court that it should reject the reasoning in *BMC Stock Holdings*. First, Wynn relies on cases from outside of this Circuit. Albeit in a summary order, the Second Circuit has examined identical contractual language as in the instant dispute, and its interpretation is consistent with the plain meaning of that language. As such, the Court declines to adopt the reasoning from other circuits. Second, Wynn's attempt to distinguish the facts here from those in *BMC Stock Holdings* is unavailing. Regardless of whether Wynn had paid the amount in dispute, Wynn asserts that it does not owe that amount to National Union under the terms of the Policy. Because National Union seeks to determine whether that amount was owed under the Policy, the dispute falls within the scope of the Payment Agreement, and in turn the arbitration provision of the Payment Agreement applies. Thus, it is immaterial whether Wynn has paid the amount. Accordingly, National Union is entitled to arbitrate this dispute.

### B. Personal Jurisdiction

*1. Legal Standard*

"In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 167–68 (2d Cir. 2015) (quotation omitted). As the Court evaluates a Rule 12(b)(2) motion, it must construe all of the plaintiff's allegations as true and resolves all doubts in its favor. *Casville Invs., Ltd. v. Kates*, No. 12 Civ. 6968 (RA), 2013 WL 3465816, at *3 (S.D.N.Y. July 8, 2013) (citing *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)). "However, a plaintiff may not rely on conclusory statements without any supporting facts, as such allegations would 'lack the factual specificity necessary to confer jurisdiction.'" *Art Assure Ltd., LLC v. Artmentum GmbH*, No. 14 Civ. 3756 (LGS), 2014 WL 5757545, at *2 (S.D.N.Y. Nov. 4, 2014) (quoting

*Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998)).  As Rule 12(b)(2) motions are "inherently . . . matter[s] requiring the resolution of factual issues outside of the pleadings," courts may rely on additional materials when ruling on such motions. *John Hancock Prop. & Cas. Ins. Co. v. Universale Reinsurance Co.*, No. 91 Civ. 3644 (CES), 1992 WL 26765, at *1 n.1 (S.D.N.Y. Feb. 5, 1992); *accord Darby Trading Inc. v. Shell Int'l Trading and Shipping Co.*, 568 F. Supp. 2d 329, 334 (S.D.N.Y. 2008).

In diversity actions, personal jurisdiction is determined in accordance with the law of the forum in which the federal court sits.  *Sirius Am. Ins. Co. v. SCPIE Indem. Co.*, 461 F. Supp. 2d 155, 160 (S.D.N.Y. 2006).  In determining personal jurisdiction over a non-domiciliary, the Court engages in a two-step analysis.  *See id.* at 160, 163.  The first step is the application of New York's long-arm statute.  *See id.* at 160.  If the exercise of personal jurisdiction is deemed appropriate pursuant to the long-arm statute, the second step is to determine whether personal jurisdiction comports with the Due Process Clause of the United States Constitution.  *See id.* at 163–64.

2. Analysis

As noted, the Payment Agreement contains a forum selection clause.  "Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements."  *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006).  "Where an agreement contains a valid and enforceable forum selection clause, . . . it is not necessary to analyze jurisdiction under New York's long-arm statute or federal constitutional requirements of due process."  *Gordian Grp., LLC v. Syringa Expl., Inc.*, 168 F. Supp. 3d 575, 581 (S.D.N.Y. 2016) (quotation omitted).  To determine whether a forum selection clause is valid and enforceable, a court must determine:

> (1) whether the clause was reasonably communicated to the party resisting enforcement; (2) whether the clause is mandatory or permissive, i.e., . . . whether the parties are required to bring any [] dispute to the designated forum or simply *permitted* to do so; and (3) whether the claims and

10

>parties involved in the suit are subject to the forum selection clause.

*NuMSP, LLC v. St. Etienne*, 462 F. Supp. 3d 330, 343 (S.D.N.Y. 2020) (quoting *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014)).  "If the forum clause was communicated to the resisting party, has mandatory force[,] and covers the claims and parties involved in the dispute, it is presumptively enforceable."  *Martinez*, 740 F.3d at 217 (quoting *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007)).  "A party can overcome this presumption only by (4) 'making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'"  *Id.* (quoting *Phillips*, 494 F.3d at 383–84).  To satisfy this fourth prong, and thereby rebut the presumption that a forum selection clause is valid, courts in this Circuit must conclude that:

>(1) [the forum selection clause's] incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum in which suit is brought; or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court.

*Du Quenoy v. Am. Univ. of Beirut*, 828 F. App'x 769, 771 (2d. Cir. 2020) (summary order) (quoting *Martinez*, 740 F.3d at 228).

The forum selection clause in the Payment Agreement states that "any action or proceeding concerning arbitrability, including motions to compel or to stay arbitration, may be brought only in a court of competent jurisdiction in the City, County and State of New York."  Doc. 29-2 at 14.  Wynn does not contest that this clause was reasonably communicated to it.  Further, the forum selection clause is mandatory, as "its language is obligatory and clearly manifests an intent to make [the forum] compulsory and exclusive"—namely, by stating that a suit may be brought *only* in New York—and Wynn

11

makes no argument to the contrary. *Pence v Gee Group, Inc.*, 236 F. Supp. 3d 843, 852 (S.D.N.Y. 2017) (quotation omitted).

Wynn disputes only the third factor—namely, that the claims and parties involved are subject to the forum selection clause. *See Martinez*, 740 F.3d at 217. Specifically, Wynn argues that the Court lacks personal jurisdiction over Respondents because the Payment Agreement—and by extension, its forum selection clause—is inapplicable to the instant suit. Thus, Wynn contends, Respondents have not consented to jurisdiction in New York, and there is no basis otherwise to conclude that the Court has personal jurisdiction over Respondents. But as noted above, the Payment Agreement is applicable to the instant suit, so its forum selection clause applies, too. And as a petition to compel arbitration, this proceeding plainly falls within the scope of the clause. *See* Doc. 29-2 at 14. Thus, the forum selection clause is presumptively enforceable. *Martinez*, 740 F.3d at 217.

Wynn has failed to rebut that presumption, as it has not shown that enforcement of the clause is "unreasonable or unjust, or that the clause was invalid." *Phillips*, 494 F.3d at 384 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). As such, the forum selection clause is valid and enforceable, and Respondents have "consented to personal jurisdiction through" it. *Berkley Assurance Co. v. MacDonald-Miller Facility Sols, Inc.*, No. 19 Civ. 7627 (JPO), 2019 WL 6841419, at *7 (S.D.N.Y. Dec. 16, 2019). Accordingly, Wynn's request under Rule 12(b)(2) is denied. *Id.*

### C. Improper Venue and *Forum Non Conveniens*

#### 1. Legal Standard

"The legal standard for a motion to dismiss for improper venue is the same as a motion to dismiss for lack of personal jurisdiction." *Casville Invs., Ltd. v. Kates*, 12 Civ. 6968 (RA), 2013 WL 3465816, at *3 (S.D.N.Y. July 8, 2013) (citing *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005)). "When a defendant challenges either the jurisdiction or venue of the court, the plaintiff bears the burden of showing that both are

proper." *Id.* (citing *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001)).  To meet this burden, the plaintiff must plead facts sufficient for a prima facie showing of jurisdiction or venue.  *Glasbrenner*, 417 F.3d at 355.

A Rule 12(b)(3) motion allows "dismissal only when venue is 'wrong' or 'improper.'  Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws."  *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 55 (2013).  In the absence of a more specific statute regarding venue, whether venue is "improper" is governed by 28 U.S.C. § 1391.  *Id.*  Venue is proper in the chosen forum if:  (1) at least one defendant resides in the district and all the defendants reside in the same state in which the district is located; (2) a "substantial part" of the events giving rise to the claim occurred in the district; or (3) a defendant is subject to personal jurisdiction in the district and "there is no district in which an action may otherwise be brought."  28 U.S.C. § 1391(b).

Whereas a Rule 12(b)(3) motion challenges whether a given venue is proper, a *forum non conveniens* motion, or transfer motion pursuant to 28 U.S.C. § 1404, addresses whether another venue is more appropriate to hear the case.  *See Atl. Marine*, 571 U.S. at 55, 60.  Notably, 28 U.S.C. § 1404(a) is "a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer."  *Id.* at 60.

Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  On a motion to transfer pursuant to § 1404(a), "a court must consider a two-part inquiry."  *Casey v. Odwalla, Inc.*, 338 F. Supp. 3d 284, 291 (S.D.N.Y. 2018).  First, a court must "determine whether the action

13

could have been brought in the proposed transferee forum." *Id.* at 292.  Second, in a typical case that does not involve "a forum-selection clause, a district court considering a § 1404(a) motion (or a *forum non conveniens* motion) must evaluate both" private-interest and public-interest considerations to determine whether transfer is appropriate. *Atl. Marine*, 571 U.S. at 63; *Casey*, 338 F. Supp. 3d at 292.  In this Circuit, those considerations include:

> (1) the plaintiff's choice of forum; (2) the convenience of the witnesses; (3) the location of relevant documents and relative ease of access to sources of proof; (4) the convenience of the parties; (5) the locus of operative facts; (6) the availability of process to compel the attendance of unwilling witnesses; (7) the relative means of the parties; (8) the forum's familiarity with the governing law; and (9) trial efficiency and the interests of justice.

*Casey*, 338 F. Supp. 3d at 292.

### 2. Analysis

First, Wynn argues that venue is improper because none of the three prongs of 28 U.S.C. § 1391(b) is satisfied.  But Wynn is wrong.  Again, venue is proper if the district is one "in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1).  Under 28 U.S.C. § 1391(c), for the purpose of venue, "an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated," is "deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." *Id.* § 1391(c).  Further, where a state has more than one judicial district, a defendant that is a corporation "shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." *Id.* § 1391(d).

As noted, Respondents are subject to the forum selection clause in the instant suit—and therefore subject to the Court's personal jurisdiction.  Accordingly, they are

14

"deemed to reside" in this District for the purpose of venue. *See id.* § 1391(c)–(d). Because, for the purpose of 28 U.S.C. § 1391, all Respondents are residents of this District, this District is a proper venue.[6]  *See id.* § 1391(b)(1).  Accordingly, the Court denies Wynn's request to dismiss for improper venue.

Second, Wynn argues that, even if venue is proper in this District, the Court should dismiss the case under *forum non conveniens*, asserting that the federal district court in the related Nevada suit is the appropriate forum to hear this matter. Because the proposed alternative court is within the federal system, the Court construes Wynn's request as a motion to transfer pursuant to 28 U.S.C. § 1404(a). *See Atl. Marine*, 571 U.S. at 60. Accordingly, the Court considers Wynn's request in accordance with the two-part inquiry pursuant to § 1404. *Casey*, 338 F. Supp. 3d at 291–92.

Even assuming Nevada is a proper venue, "[t]he proper application of [the] otherwise familiar § 1404(a) factors . . . is fundamentally inflected by the presence of a valid forum-selection clause. In such cases, the parties have 'waive[d] the right to challenge the preselected forum as inconvenient . . . for themselves or their witnesses.'" *Berkley*, 2019 WL 6841419, at *4 (quoting *Atl. Marine*, 571 U.S. at 64). Accordingly, a court "must deem the private-interest factors to weigh entirely in favor of the preselected forum," and "a district court may consider arguments about public-interest factors only."[7]

---

[6] That result aligns with the analysis of other courts in this District, which have noted that "[v]enue, as with personal jurisdiction, may be created by the contractual agreement of the parties." *Bank of N.Y. Mellon Tr. Co., N.A. v. Gebert*, No. 13 Civ. 6988 (PKC), 2014 WL 1883551, at *4 (S.D.N.Y. May 9, 2014) (quoting *Nat'l Union Life Ins. Co. v. Casmalia Res. Ltd.*, 89 Civ. 1045 (SWK), 1990 WL 102199, at *4 n.4 (S.D.N.Y. July 11, 1990)); *Coface v. Optique Du Monde, Ltd.*, 521 F. Supp. 500, 506 (S.D.N.Y. 1980) ("To consent to personal jurisdiction in the New York courts without also consenting to venue would thus be a meaningless exercise, at least in this case where each party reasonably should have anticipated that venue in this forum would be improper but for such a forum selection clause."); *see also Atl. Marine*, 571 U.S. at 62 ("When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause."). Thus, because "the Court has personal jurisdiction by virtue of the forum selection provision, venue is similarly proper." *Gebert*, 2014 1883551, at *4 (quoting *Casmalia Res.*, 1990 WL 102199, at *4 n.4)).

[7] The Court notes that, in addition to the public-interest factors identified by the Second Circuit, the Supreme Court has noted that public-interest factors may also "include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and]

*Atl. Marine*, 571 U.S. at 64.  And "[b]ecause those factors will rarely" override the weight given to the parties' contracted choice of forum, "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Id.* at 63–64 (quotation omitted).

Wynn contends that both private- and public-interest considerations require the Court to conclude that the Nevada court is the appropriate forum to hear the instant dispute.  As an initial matter, because the Court has already determined that the parties entered into a valid forum selection clause that is applicable here, the Court must consider only the public-interest factors Wynn raises.  *Id.* at 64.

Wynn asserts that the following public-interest factors favor the Nevada forum: (1) the instant suit will involve an in-depth analysis of the Continental Litigation, which involved Nevada parties litigating in Nevada state court; (2) this suit will require applying Nevada law that governs an insurer's duty to its insureds; (3) there will be significant discovery related to National Union's decision to cover the cost in the Continental Litigation;  and (4) this case will involve identifying and deposing witnesses in Nevada.  The Court, however, is not convinced.  The latter two factors are properly categorized as private-interest considerations, since they involve the convenience of the parties themselves or their witnesses; thus, they are irrelevant to the Court's analysis given the presence of a valid and enforceable forum selection clause.  *See Berkley*, 2019 WL 6841419, at *4.  And while there is certainly an interest for courts in a given state to resolve cases that involve parties in that state and that state's law, those circumstances are fairly common in cases where parties have consented to forum selection clauses.  Such a common concern, without more, fails to render the instant suit one of "the most exceptional cases" that would justify not giving controlling weight to the parties' forum

---

the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Atl. Marine*, 571 U.S. at 62 n.6 (quotation omitted).

selection clause. *Atl. Marine*, 571 U.S. at 63 (quotation omitted); *see also id.* at 66 ("In all but the most unusual cases, therefore, 'the interest of justice' is served by holding parties to their bargain."). Accordingly, the Court denies Wynn's request to transfer pursuant to *forum non conveniens*.

### III. CONCLUSION

For the foregoing reasons, National Union's motion to compel arbitration is GRANTED, and Wynn's countermotion to dismiss for lack of personal jurisdiction, improper venue, and *forum non conveniens* is DENIED. Wynn's request for oral argument is denied as moot. Doc. 35. This action is hereby STAYED pending arbitration, and the parties are directed to advise the Court within 48 hours of the outcome of the arbitration. The Clerk of Court is respectfully directed to terminate the motion. Doc. 28.

It is SO ORDERED.

Dated: December 23, 2020
New York, New York

EDGARDO RAMOS, U.S.D.J.